UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FRANKLIN PEREZ-ESPINOSA,

                Petitioner,

    v.

ANGELA HOOVER, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-01650

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Franklin Perez-Espinosa ("Perez-Espinosa") brings this petition for writ of habeas corpus. (Doc. 1). On June 15, 2026, Perez-Espinosa filed the instant petition, requesting that Respondents Angela Hoover and Brian McShane[1] release him from custody at the Clinton County Correctional Facility in McElhattan, Pennsylvania or provide a bond hearing pursuant to *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). (Doc. 1, at 14). The government filed a timely response to Perez-Espinosa's

---

[1] The proper respondent in this case is Angela Hoover ("Hoover"), Warden of the Clinton County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Perez-Espinosa is detained at the Clinton County Correctional Facility, Hoover is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Brian McShane is **DISMISSED**. However, the government will be bound by the Court's judgment because Hoover is acting as an agent of the federal government by detaining Perez-Espinosa on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

petition on June 23, 2026 (Doc. 4), and on June 24, 2026, Perez-Espinosa filed a traverse. (Doc. 5). For the following reasons, Perez-Espinosa's petition (Doc. 1) is **GRANTED**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Perez-Espinosa's petition, the government's response, and the exhibits thereto. (Doc. 1; Doc. 4). Perez-Espinosa is a citizen of Cuba, who entered the United States on or about October 5, 2016. (Doc. 1, at 10; Doc. 4, at 2). On August 1, 2019, the government adjusted Perez-Espinosa to lawful permanent resident status under the Cuban Adjustment Act. (Doc. 4, at 2; Doc. 4-2, at 6). The government also granted Perez-Espinosa employment authorization. (Doc. 1, at 10).

On November 4, 2024, Perez-Espinosa was convicted in the United States District Court for the Southern District of Florida, Miami Division, for conspiracy to commit healthcare fraud and wire fraud in violation of 18 U.S.C. § 1349. (Doc. 4, at 2; Doc. 4-2, at 9). The court sentenced Perez-Espinosa to twenty-four months of incarceration. (Doc. 4, at 2; Doc. 4-2, at 10). On February 7, 2025, ICE encountered Perez-Espinosa at the Federal Correctional Institution, Allenwood Low ("FCI Allenwood"), where he was incarcerated. (Doc. 4, at 2). ICE issued Perez-Espinosa an immigration detainer and warrant for arrest. (Doc. 4, at 2). On April 7, 2025, ICE issued Perez-Espinosa a notice to appear in removal proceedings. (Doc. 4, at 2; Doc. 4-3, at 3).

On January 12, 2026, an immigration judge ordered Perez-Espinosa to be removed from the United States. (Doc. 1, at 10; Doc. 4, at 2-3). Perez-Espinosa timely appealed his order of removal to the Board of Immigration Appeals ("BIA") on February 9, 2026, and his appeal is pending. (Doc. 1, at 10; Doc. 4, at 2-3). On February 17, 2026, ICE transferred Perez-Espinosa to the Clinton County Correctional Facility, where he has remained detained

for nearly five months. (Doc. 1, at 10; Doc. 4, at 2).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if it determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the Due Process Clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

### III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil*, 164 F.4th at 278-79 (finding that length of confinement without a bond hearing claim "does not get channeled into the PFR review process"). Perez-Espinosa's petition is soundly before the Court as Perez-Espinosa filed the instant petition while detained within the jurisdiction of this Court, is still

currently detained by ICE, and asserts that his continued detention violates due process. (Doc. 1, at 11-12); *see J. G. G.*, 604 U.S. at 672 (acknowledging that immigration-related detainees' claims "fall within the 'core' of the writ of habeas corpus") (quoting *Nance*, 597 U.S. at 167); *see also Kahlil*, 164 F.4th at 274-79.

## IV.   DISCUSSION

Perez-Espinosa requests that Hoover release him from custody at the Clinton County Correctional Facility or provide him with a bond hearing. (Doc. 1, at 14). Perez-Espinosa contends that because ICE has detained him under 8 U.S.C. § 1226(c) for almost five months and his detention is likely to continue, he is entitled to a bond hearing, at which the government bears the burden of demonstrating that continued detention is warranted. (Doc. 1, at 12). The government counters that Perez-Espinosa's detention does not violate due process because the detention is pursuant to the mandatory detention provision of § 1226(c) and has not been prolonged. (Doc. 4, at 3-6). The government reasons that Perez-Espinosa's nearly five-month detention is constitutional because it is directly tied to the adjudication of his removal proceedings. (Doc. 4, at 5).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). While it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings, the Supreme Court has recognized that detention during deportation proceedings is a constitutionally valid aspect of the deportation process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). Detention of noncitizens pending their

removal proceedings serves the purpose of preventing noncitizens from fleeing before or during the removal proceedings. *Demore*, 538 U.S. at 528. However, the Due Process Clause limits detention without a bond hearing to a "reasonable period." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208 (3d Cir. 2020). Therefore, due process affords detained noncitizens a bond hearing once their detention becomes unreasonable. *Santos*, 965 F.3d at 211.

The parties do not dispute that Perez-Espinosa is detained pursuant to 8 U.S.C. 1226(c), which provides for the mandatory detention of, among others, noncitizens convicted of certain crimes. (Doc. 1, at 1; Doc. 4, at 1). 8 U.S.C. § 1226(c). Section 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 583 U.S. at 305. Although 8 U.S.C. § 1226(c) provides for mandatory detention and the Supreme Court has determined that "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process, prolonged detention raises due process concerns. *Demore*, 538 U.S. at 531; *Santos*, 965 F.3d at 210.

Section 1226(c) immigration detainees enjoy the basic due process right to an individualized bond determination once the length of their detention before removal has become unreasonable. *Santos*, 965 F.3d at 210-11. To determine whether a noncitizen's detention has become unreasonable, courts evaluate four factors established by the Third Circuit in *Santos*: (1) the length of the detention; (2) whether the detention is likely to continue; (3) the reasons for any delay that prolongs detention; and (4) whether the noncitizen's conditions of confinement are meaningfully different from criminal punishment. 965 F.3d at

211. The Court will evaluate each *Santos* factor to determine whether Perez-Espinosa's detention has become unreasonable.

A. LENGTH OF DETENTION

Perez-Espinosa contends that his nearly five months of detention has become unreasonable because it already exceeds the "roughly a month and a half" of detention contemplated in *Demore v. Kim*, 538 U.S. 510, 529-30 (2003) and it is near the period where Third Circuit courts begin applying heightened constitutional scrutiny. (Doc. 1, at 12). Perez-Espinosa also contends that his detention is likely to continue well past one year based on current processing times for immigration appeals. (Doc. 5, at 3). The government counters that courts in the Third Circuit have found periods of mandatory detention longer than five months to be constitutional. (Doc. 4, at 4).

The Third Circuit has identified the first *Santos* factor, duration of detention, as the "most important factor" in evaluating the reasonableness of a noncitizen's detention during removal proceedings. *Santos, 965 F.3d at 211*. While the Third Circuit has not adopted a presumption of reasonableness or unreasonableness for any duration of detention, the Third Circuit has found that detention becomes increasingly suspect after five months. *Santos, 965 F.3d at 211* (citing *Demore*, 538 U.S. at 515; *Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 234 (3d Cir. 2011)); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026) (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015)) (re-affirming that detention without opportunity for bond becomes unreasonable between six months and one year after it began).

Perez-Espinosa has been in immigration detention at the Clinton County Correctional Facility for nearly five months. (Doc. 1, at 12; Doc. 4, at 3). Because Perez-Espinosa's length

of detention is sixteen days from the Third Circuit's five-month tipping point, Perez-Espinosa's length of detention slightly favors a finding of reasonable detention. *See Santos*, 965 F.3d at 211; *see Michelin*, 169 F.4th at 433-34. Accordingly, the first *Santos* factor, duration of detention, weighs slightly against a finding of unreasonable detention.

B. LIKELIHOOD OF CONTINUED DETENTION

Perez-Espinosa contends that without relief from the Court, his detention is likely to extend for well past one year. (Doc. 1, at 12; Doc. 5, at 3). Perez-Espinosa provides that given the processing times for immigration appeals, his appeal is likely to continue for several months. (Doc 1, at 12; Doc. 5, at 3). Perez-Espinosa notes that he will possibly seek an appeal to the Third Circuit depending on the BIA's removal decision, which would further prolong his mandatory detention. (Doc 1, at 12; Doc. 5, at 3). The government avers that the second *Santos* factor, likelihood of continued detention, weighs in the government's favor because Perez-Espinosa's appeal is currently pending before the BIA. (Doc. 4, at 5).

When a noncitizen's removal proceedings are unlikely to end soon, continued detention without a bond hearing weighs towards a finding of unreasonable detention. *Santos*, 965 F.3d at 211. Courts in the Third Circuit have found that an immigration detainee appealing his or her order of removal creates a likelihood of continued detention that favors granting habeas relief. *J.G.J. v. Sage*, No. 3:26-cv-706, 2026 WL 915576, at *10 (M.D. Pa. April 3, 2026) (citing *Joseph v. Warden*, No. 3:25-cv-02428, 2026 WL 497532, at *2 (M.D. Pa. Feb. 23, 2026)). Further, delays of an undefined duration continue to accrue during administrative proceedings that may be necessary following an appellate court decision. *Bah v. Doll*, No. 3:18-CV-1409, 2018 WL 6733959, at *8 (M.D. Pa. Oct. 16, 2018).

As a result of his appeal to the BIA, Perez-Espinosa's order of removal is not yet final, and he remains in pre-order of removal detention. 8 C.F.R. § 1241.1(c); *see J.G.J. v. Sage*, 2026 WL 915576, at *10. At this time, the undersigned cannot determine precisely how long Perez-Espinosa's removal proceedings will remain pending. However, as Perez-Espinosa appealed his order of removal on February 9, 2026, and the Department of Homeland security has not yet submitted a brief, it is unlikely that Perez-Espinosa's removal proceedings will be resolved in the near future. Automated Case Information, Executive Office of Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited June 30, 2026); *see Santos*, 965 F.3d at 212; *see also J.G.J. v. Sage*, 2026 WL 915576, at *10. Perez-Espinosa has also indicated that depending on the outcome of the BIA appeal, further petition for review to the Third Circuit could follow, which would further prolong the duration of Perez-Espinosa's removal proceedings. (Doc. 1, at 12). As such, the second *Santos* factor weighs in favor of a finding of unreasonableness. *See Santos*, 965 F.3d at 212; *see Bah*, 2018 WL 6733959, at *8; *see also J.G.J. v. Sage*, 2026 WL 915576, at *10.

C. REASONS FOR DELAYS

Perez-Espinosa contends that any delays in his removal proceedings are a result of his good faith legal challenge to his order of removal. (Doc. 1, at 12; Doc. 5, at 4). The government also submits that it has not intentionally delayed or unreasonably prolonged Perez-Espinosa's proceedings. (Doc. 4, at 5).

In evaluating the third *Santos* factor, courts look at the reasons for the delay, such as a detainee's request for continuances or bad-faith errors in the removal proceedings that caused unnecessary delay. *Santos*, 965 F.3d at 211. Courts should not hold a noncitizen's good-faith challenge to removal against him, even when his appeals or petitions for review have drawn

out the proceedings. *Santos*, 965 F.3d at 211. Courts should also decline to hold legal errors against the government unless there is evidence of carelessness or bad faith. *Santos*, 965 F.3d at 211. Nevertheless, detention can still grow unreasonable in the absence of governmental bad faith. *Santos*, 965 F.3d at 211.

While Perez-Espinosa's removal proceedings have been ongoing since April 2025, the government has not demonstrated carelessness or bad faith that would cause unnecessary delay. (Doc. 4-3, at 3); *see Santos*, 965 F.3d at 212 (citing *Diop*, 656 F.3d at 224-25) (finding unnecessary delay where an immigration judge repeatedly issued decisions that were so unclear that they required remands for clarification and the government was slow to produce evidence relevant to whether petitioner was properly detained). Likewise, Perez-Espinosa's appeal to the BIA should not be held against him in evaluating the reasons for delay. *See Santos*, 965 F.3d at 211. Accordingly, the reasons for the delay of Perez-Espinosa's removal proceedings are a neutral factor in weighing whether Perez-Espinosa's detention is unreasonable.

D.  CONDITIONS OF CONFINEMENT

Perez-Espinosa contends that his confinement at the Clinton County Correctional Facility is not meaningfully different from criminal punishment. (Doc. 5, at 4). The government counters that Perez-Espinosa's detention is not punitive because Perez-Espinosa is not confined to his cell for twenty-three hours a day. (Doc. 4, at 6).

To evaluate the conditions of confinement, courts examine whether the noncitizen's conditions of confinement are "meaningfully different" from criminal punishment. *Santos*, 965 F.3d at 211. If a noncitizen's civil detention under § 1226(c) looks penal, that shifts the scale towards finding the detention unreasonable. *Santos*, 965 F.3d at 211. The Clinton

County Correctional Facility is a county jail that houses criminal detainees alongside immigration detainees. *Yirenkyi v. Hoover*, No. 3:25-cv-2414, 2026 WL 268230, at \*4-\*5 (M.D. Pa. Feb. 2, 2026); *Dong v. Hoover*, No. 1:25-cv-8s, 2026 WL 711692, at \*4 (M.D. Pa. March 13, 2026). The government contends that Perez-Espinosa's detention is meaningfully different from criminal punishment because Perez-Espinosa is not confined to his cell for twenty-three hours a day, like Santos was while detained at the Pike County Correctional Facility. (Doc. 4, at 6); *Santos*, 965 F.3d at 212-13. However, the government fails to provide evidence that Perez-Espinosa's detention is meaningfully different from the detention of criminal detainees at the Clinton County Correctional Facility. *See Yirenkyi*, 2026 WL 268230, at \*4-\*5 (finding conditions of confinement weigh in favor of petitioner where the government provided no evidence that petitioner was treated any differently from the criminal detainees at the Clinton County Correctional Facility); *see also Dong*, 2026 WL 711692, at \*4 (finding that the conditions of immigration detention and criminal detention do not meaningfully differ at the Clinton County Correctional Facility). Accordingly, the Court finds Perez-Espinosa's conditions of confinement to be indistinguishable from criminal punishment, weighing in favor of unreasonable detention.

## V.   CONCLUSION

Taking the four *Santos* factors together, Perez-Espinosa's detention has become unreasonable and violates due process. Accordingly, Perez-Espinosa's petition for writ of habeas corpus (Doc. 1) is **GRANTED**. The appropriate remedy is for Perez-Espinosa to be afforded a bond hearing, in which the government bears the burden of proof to justify Perez-Espinosa's detention with clear and convincing evidence. *Santos*, 965 F.3d at 213. The Court will conduct the individualized bond hearing as a habeas remedy, considering the risks of

perpetuating constitutional injury with continued delays. *See Centeno-Martinez v. Jamison*, No. 25-3593, 2025 WL 3157711, at *3 (M.D. Pa. 2025) (citing *Leslie v. Holder*, 865 F. Supp. 2d 627, 634-35 (M.D. Pa. 2012); *Thaxter v. Sabol*, No. 14-02413, 2016 WL 3077351, at *3 (M.D. Pa. June 1, 2016)) (finding district courts in the Third Circuit have exercised the authority to conduct bond hearings under habeas jurisdiction, particularly where there is a risk of further injury due to delay); *see also J.G.J. v. Sage*, 2026 WL 915576, at *11 n.19 (collecting cases) (noting the government acknowledged that district courts may conduct bond hearings in habeas corpus cases brought by immigration detainees). The Court **ORDERS** a bond hearing to be held before the undersigned on **WEDNESDAY, JULY 8, 2026 at 12:00 p.m.** in Courtroom #1 of the William J. Nealon Federal Building and United States Courthouse.

An appropriate Order follows.

**BY THE COURT:**

Dated: July 1, 2026

*/s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

12